M.J. Haden
Assistant Federal Defender
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
601 West Fifth Avenue, Suite 800
Anchorage, Alaska 99501
(907) 646-3400
(907) 646-3480 fax

Attorney for Defendant

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>KALEB LEE BASEY,<br><br>Defendant. | Case No. 4:14-CR-00028-RRB-SAO<br><br>**MEMORANDUM IN SUPPORT OF MOTION TO SUPPRESS ALL EVIDENCE SEIZED FROM KALEB BASEY'S BARRACKS ROOM** |

**I. Statement of Facts[1]**

On January 16, 2014, the Alaska Bureau of Investigation ("ABI") received a report from an individual who had been looking at ads on Craigslist. The individual reported to the ABI that she had seen an ad located in the "Casual Encounters (M4W)" section of the site that was labeled "daughter share." The ad asked whether there were any "dads or moms" who wanted to "share" their daughter for the night. The ad further stated, "Just gauging interest, must have a daughter. Respond with torchat id if you got one." The author of the ad described himself as a "Fit, attractive, kinky, hung male."

---

[1] The following facts are based on the discovery provided by the government pursuant to Rule 16 and testimony that are expected to be brought out during an evidentiary hearing.

Included in the ad was a photo of a fully clothed girl laying on a couch. The ad had been posted at 21:46 (Pacific Time) on January 15, 2014. The ad did not mention digital media, money, a meeting place, or child pornography.

Following the discovery of the posting, the ABI served a warrant on Craigslist to obtain the IP address of the computer from which the ad was posted. Once ABI obtained the IP address, they then served a warrant on GCI to obtain information associated with the IP address used to post the ad. Information from GCI indicated that the IP address was associated with Kaleb Basey, located at Building 3422, Room 310A on Fort Wainwright.

On January 17, 2014, the case investigator met with the ABI and contacted Special Agent Shanahan with the Criminal Investigation Department ("CID") on Fort Wainwright regarding Mr. Basey. SA Shanahan conducted a Department of Defense People Search and confirmed that Spc. Kaleb Basey was indeed associated with the information received from GCI. While SA Shanahan was conducting the DOD search, the aforementioned Craigslist ad was deleted.

Based on the military connection, ABI and CID investigators had a meeting and decided that the two agencies should conduct a joint investigation "with ABI as the lead." While this meeting was being conducted ABI discovered a second Craigslist ad. This ad featured a photo of an adult woman hugging a young girl from behind. The woman appeared to have one hand placed down or near the waist band of the girl's pants; although, it was uncertain if the woman was touching the girl inappropriately. The ad stated, "I'm a good looking guy looking for a mom who has a young daughter shed (sic)

like to share with me for taboo fun. It's a lot warmer here in int(sic) Alaska today." The ad did not mention digital media, money, a meeting place, or child pornography. An ABI officer attempted to respond to the ad in hopes of gaining more information, but before a response could be accomplished, the ad was deleted.

In an effort to further investigate the origin of the IP address associated with the Craiglists postings, CID officers went to Spc. Basey's barracks. After walking in the common areas outside of Spc. Basey's room, the officers determined that all the wi-fi signals in the immediate area were password protected. After verifying this information, SA Shanahan submitted an application for authorization to search and seize evidence Spc. Basey's room. (Attachment A.) The application included sweeping provisions that allowed the CID officers to search not only Spc. Basey's room but also "the common area of room #310; his privately owned vehicle; assigned storages he has access to; and his wallet, cell phone, bags, cases, book bags, gym bags, luggage, hand bags, suitcases." The application also included language asking for permission to allow CID officers to seize <u>and</u> search all Mr. Basey's electronic media including:

> All digital media devices, including personal computers, laptop computers and "computing systems,," hard disks, zip disks, removable hard drives, zip drives, disks, diskettes, electronic storage media, computer tapes, optical storage devices, tapes, smart cards cassettes, pagers, cellular telephones, digital cameras, personal digital assistants such as Palm III devices, memory cards and cartridges.
> (Attachment A.)

Notable in the affidavit in support of the authorization to search, SA Shanahan does not identify the offense(s) that he expects to find evidence of Spc. Basey having committed. Other than mentioning the fact that he had gone through training in

the fields of "crime scene processing, analysis and collection of forensic evidence, and photography" and that he has participated in investigation of criminal activities, including "fraud and computer crimes involving child pornography, sexual assault, extortion, larcenies and distribution of controlled substances," he sets forth no qualification to conduct an investigation of computers or the recovery of digital evidence. Furthermore he does not explain why he believes that evidence of a criminal offense will be found in Basey's room or on any of the electronic media devices that Basey possessed, let alone why child pornography might be on these devices.

The authorization to search was electronically signed by LTC Jennifer Brewer, a part-time military magistrate from Fort Lewis-McCord, Washington. The authorization was executed on Spc. Basey's room around 3:00 a.m. the following morning while Spc. Basey was in bed sleeping. The authorization was executed by multiple MPs and CID agents who knocked on Spc. Basey's door and quickly removed him into the hallway. At the time, he was dressed only in his long underwear. He was immediately patted down, handcuffed, and forced to remain in the public hallway, while the visibly armed law enforcement officers searched his room and surrounding areas.

While forcibly confined to the hallway, Spc. Basey was asked seemingly innocuous questions such as his military occupation specialty. Although he was not advised of his Miranda rights at this time, he responded to all questions of this nature. Concerned that he had a gate guard shift that was to begin in a few hours for which he was responsible for the transportation of another soldier, he asked one of the law enforcement officers if he would be able to make his shift and pick up his fellow soldier.

United States v. Kaleb Lee Basey
Case No. 4:14-cr-00028-RRB-SAO                                                                                           Page 4

Case 4:14-cr-00028-RRB   Document 45   Filed 04/21/15   Page 4 of 15

He was told by the officers that they would alert his fellow soldier that he would not be available to give him a ride.

Seized during the search was an iPhone, computer tower, several USB drives, several CD and DVDs and SD cards. Law enforcement did not leave a copy of the authorization, nor a copy of the inventory of the seized items in the room.

Following the search, Spc. Basey was allowed to get dressed. He was then lead in handcuffs and placed in the back of a marked patrol car. Although during this time period he had had contact with numerous law enforcement officers, he had not been advised on his <u>Miranda</u> rights.

Once in the car, Spc. Basey inquired of officer, "Why are you guys here tonight?" The officer replied, "I don't know. Why do you think we are here?" Basey, answered, "I texted an escort tonight." The officer replied, "that might be why." Basey was then transported to CID headquarters where he was let in through a secured entrance. Once inside, he was placed under observation by yet another officer, while the search team conferred in another room. Eventually, Spc. Basey was taken to the interrogation room. The interrogation room was a sterile room with one window with bars on the outside, a door, two chairs, a desk, and a large pane of one-way glass. At that point, Spc. Basey had not been read his rights, nor told that he was free to go. Basey is left alone in the interrogation room for several minutes before SA Shananhan enters. SA Shanahan informed Spc. Basey that he wanted to ask him some questions, but in order to do so, Basey must waive his rights. At this point, approximately one hour has passed between Spc. Basey's non-Mirandized questioning in the back of the patrol car and his

interview with SA Shanahan.

SA Shanahan begins the interview by asking Spc. Basey basic biographical questions. He then he tells Spc. Basey that he would like to ask him some questions. But, in order to do so he tells Basey that he must advise his of his rights. SA Shanahan reads Spc. Basey his rights and then presents a written waiver of rights certificate for him to sign. The waiver of rights form indicates that Basey is suspected of "solicitation of a prostitution, solicitation to engage in sexual assault with a child, pandering." Spc. Basey signs the waiver and agrees to speak with SA Shanahan. (Attachment B.)

SA Shanahan begins the interrogation by referring to Basey's unmirandized statement regarding his admission that he had been trying to hire a prostitute through texting. Because he has already made this affirmative statement Basey again confirms this conduct. As the interview continues, Spc. Basey not only admits to the suspected Craigslist postings, but also admits to possessing child pornography on his computer. At this point, SA Shanahan stops the interview and takes a 15 or 20 minute break. When he re-enters the interview room he presents Basey with a new waiver of rights form containing the additional charge of possession of child pornography. (Attachment C.) Again Spc. Basey signs the waiver and the interrogation continues. After approximately one hour and 30 minutes, Basey is told that he is allowed to leave. Before doing so, he signs a consent allowing law enforcement to examine his electronic media, as well as, providing them with the passwords to do so. This consent is withdrawn a few days later, prior to any examination of the seized items.

Following Spc. Basey's interview, all electronic media was turned over to

ABI for examination. Pursuant to the original military authorization, over the following months, ABI/AST performed a forensic analysis on the electronic media. In July of 2014, based on their electronic data examination, ABI/AST contacted the FBI and transferred all the electronic devices to them, as well as, their findings regarding evidence of criminal activity discovered which supported the current federal charges.

After receiving this information, in November 2014 the FBI applied for and is granted a second search warrant to examine the same electronic media seized as the result of the original search of Basey's room. (Attachment D.) This warrant and subsequent search reveals the evidence that forms the basis of the charges at hand. In the FBI's warrant to search the same media that ABI/AST had already examined, the affiant stated that she had not relied on any information from the former search; however, she did include the statements made by Basey during his interrogation. The federal search warrant was granted and the evidence seized as a result forms the basis of the charges against Mr. Basey.

## II. Fourth Amendment Applies to the Search and Seizure of Spc. Basey's Barracks

The Fourth Amendment prohibits unreasonable searches and seizures. This provision is applicable to military searches. United States v. Muniz, 23 M. J. 201, 204 (C.M.A. 1987) ("There is no question that the Fourth Amendment to the Constitution applies to service members"); United States v. Stuckey, 10 M. J. 347, 349 (C.M.A. 1981); see generally United States v. Brown, 784 F. 2d 1033, 1037 (10th Cir. 1996); Garrett v. Lehman, 751 F. 2d 997, 1002 (9th Cir. 1985).

Under rule 315(f)(1) of the Military Rules of Evidence, an investigatory search of a service member's living quarters requires probable cause. The rule provides a definition of probable cause that is substantially identical to the one used in non-military situations. The rule also states that the executing agent should notify the person whose property is being searched about the search and authorization and its substance. Mil. R. Evid. 315 (h)(1). An inventory of the property seized "shall be made at the time of the seizure" or "as soon as practicable thereafter." Mil. R. Evid. 315(h)(2). The rule requires that at an appropriate time, a copy of the inventory "shall be given to a person from whose possession or premises the property was taken." Id. This was not done following the search of Spc. Basey's room.

### III. The Supporting Affidavit Failed to Establish Probable Cause to Support the Search of Spc. Basey's Room

The Fourth Amendment of the United States constitution establishes that "the right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated and no warrants shall issue, but upon probable cause." U.S. Const. Amend. IV. "The amendment is to be liberally construed and all owe the duty of vigilance for its effective enforcement lest there shall be impairment of the rights for the protection of which it was adopted." Go-Bart Importing Co. v. United States, 282 U.S. 344, 357 (1931). A search warrant must be based upon a showing of probable cause that a crime has been committed and that evidence of that crime is present on the premises to be searched. United States v. Washington, 797 F. 2d 1461, 1473 (9th Cir. 1986). In evaluating whether a warrant's breadth is sufficiently

supported by probable cause, the court must ensure that the magistrate had a "substantial basis" for finding probable cause. In re Solid State Devices, Inc., 130 F. 3d 853, 856 (9th Cir. 1997).

Here, SA Shanahan's requested authorization from the court to search for and seize all electronic media from Spc. Basey's room is not supported by probable cause that items requested would have any evidence of a criminal offense. The affidavit gives no explanation as to what law enforcement is searching for or what they expect to find with regard to the items they are requesting to seize. Because no probable cause exists to support the seizure of the electronic media, all evidence seized from Spc. Basey's room must be suppressed.

**IV. Even if SA Shanahan's Supporting Affidavit Established Probable Cause for the Search of the Room, It Lacked the Necessary Probable Cause to Search the Electronic Data.**

It is the basic principle of the Fourth Amendment that for a search warrant to issue there must be probable cause. U.S. Constitution IV. In determining whether there is probable cause to issue a search warrant, the task of the issuing magistrate is "simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before [her], . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). The U.S. Constitution does not require an exhaustive description of the facts, but "sufficient information must be presented to the magistrate to allow that official to determine probable cause; his actions cannot be a mere ratification of the bare conclusions of others." Id. at 239.

In the present case, the four corners of SA Shanahan's affidavit do not explicitly identify the offense or offenses which Spc. Basey was suspected of committing. However, the affidavit does contain a fragmented sentence mentioning "Solicitation, child pornography, and sexual assault of a child." One might infer from this isolated reference that the authorization to search the electronic media was motivated by the belief that Spc. Basey's media were likely to contain evidence related to either solicitation to engage is sexual abuse of a minor (although the Craigslist ads were directed at adults, no children) and/or possession of child pornography (although neither ad referenced child pornography). Even working under this assumption, the affidavit still falls considerably short of probable cause to search the electronic media because the affidavit fails to describe how the areas and items to be searched pertained to this investigation.

Under well-established Ninth Circuit authority, the blanket assertion that a suspected pedophile is likely to possess child pornography is not enough, standing alone, to constitute probable cause to believe that the person presently possesses child pornography.[2] Clearly, based on SA Shanahan's limited affidavit, there was no probable cause to search Spc. Basey's electronic media for child pornography.

---

[2] Dougherty v. City of Covina, 654 F. 3d 892, 898 (9th Cir. 2011) (no probable cause to search for evidence related to child pornography; affidavit contained numerous allegation of defendant's sexual misconduct, but provided no evidence that defendant was interested in possessing or receiving child pornography); United States v. Weber, 923 F. 2d 1338 (9th Cir. 1990) (no probable cause to issue warrant based on "rambling" "boilerplate" and "foundation less" expert assertions that pedophiles are likely to possess child pornography); See also, United States v. Adkins, 961 Fed. Appx. 961, 967 (6th Cir. 2006) ("Standing alone, a high incidence of child molestation by persons convicted of child pornography crimes may not demonstrate that a child molester is likely to possess child pornography.")(dicta); United States v. Falso, 544 f. 3d 110, 123 (2nd Cir. 2009) (holding that a crime allegedly involv[ing] the sexual abuse of a minor, [does] not relate to child pornography . That the law criminalizes both child pornography and the sexual abuse (or endangerment) of children cannot be enough.")

## V. The Good Faith Exception Does Not Apply

The Supreme court has held that evidence seized pursuant to a facially valid warrant may still be admitted as evidence if the officer conducting the search acted in good faith and in reasonable reliance on the warrant. United States v. Leon, 468 U.S. 897, 926 (1984). The Court held that the exclusionary rule will not apply unless the officers "were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." Id. In Illinois v. Gates, 462 U.S. 213, 239 (1983), the Court held that reviewing courts will not defer to a warrant based on an affidavit that does not "provide the magistrate with a substantial basis for determining the existence of probable cause." The government bears the burden of proving that reliance upon the warrant was objectively reasonable. United States v. Kow, 58 F. 3d 423, 248 (9th Cir. 1995).

Consider the facts of United States v. Hodson, 543 F. 3d 286, 289 (6th Cir. 2008). There, police officers applied for a warrant to search and seize electronic media possessed by a defendant who had engaged in a sexually provocative chat with conversations with an undercover officer pretending to be a 12 year-old boy. During the chat room conversation, the defendant stated, among other things, that he was a 41 year old and had a sexual interest in underage boys; that he like to look at his nine and 11 year old sons naked; and that he had sex with his seven year old nephew. The Sixth Circuit held that "it was beyond dispute" that the warrant was defective, because the supporting affidavit "established probable cause for one crime (child molestation) but was designed and requested a search for evidence of an entirely different crime.

The court additionally held that Leon's good faith exception did not apply, as it was objectively unreasonable for the officers to believe there was probable cause to search Hodson's computers for child pornography based solely on a suspicion that he had engaged in solicitation of a minor to engage in sexual conduct – even though that suspicion was triggered by the defendant's use of a computer. Id. at 293.

The affidavit in this case is completely void of any reasoning as to why Spc. Basey might have child pornography on any of his electronic devices. The officer's reliance on the affidavit to support such a search is objectively unreasonable.

**VI. Second Warrant Received by FBI Does Not Meet the Requirements of the Inevitable Discovery/Independent Source Rule**

The government may argue that even if the military authorization was unsupported by sufficient probable cause to allow the search of Spc. Basey's electronic media, this defect was remedied by the rule of Inevitable Discovery or Independent Source. Spc. Basey maintains that neither of these rules apply.

**A. Inevitable Discovery**

In 1984, the Supreme Court articulated the "inevitable discovery doctrine" in Nix v. Williams, 467 U.S. 413 (1984). It holds that "[i]f the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means," then the exclusionary rule will not prevent introduction of the evidence. Id. The inevitable discovery doctrine has its limits, however, because "inevitable" discovery is not the same thing as "possible" or even "probable" discovery. See United States v. Allen, 159 F. 3d 832, 842 (4th Cir. 1998) (reversing finding of

inevitable discovery when government argued that luggage could have been sniffed by dog, that dog would have alerted, and that police could have obtained a search warrant). Also the inevitable discovery doctrine will not justify a warrantless search simply because the agents had probable cause to seek a warrant but did not.  See United States v. Mejia, 69 F. 3d 309, 319 (9th Cir. 1995) ("We reject the contention that [the inevitable discovery] doctrine applies where the police had probable cause to conduct a search but simply failed to obtain a warrant . . . If evidence were admitted notwithstanding the officers' unexcused failure to obtain a warrant, simply because probable cause existed, then there would never be any reason for officers to seek a warrant.").

Here, law enforcement did seek a warrant; however, the warrant was grossly unsupported by probable cause.  They sought to examine the electronic media anyway.  After learning the contents of the media, they then reached out to the FBI and reported their findings.  The FBI, after reviewing the history of the investigation, applied for and received a warrant authorizing a second search.  Spc. Basey asserts that these facts are equivalent to law enforcement not having a warrant in the first place and thus, on par with Mejia.  Thus, the government should not be allowed to utilize the Inevitable Discovery doctrine in this case.  As a result, all evidence obtained as a result of search of the electronic media must be suppressed.

### B.   Independent Source Rule

Evidence that would otherwise be subject to the exclusionary rule might nevertheless be admissible if it was also obtained through a lawful "independent source." See Murray v. United States, 487 U.S. 533 (1988).  But this exception is unavailable if

the illegal search prompted the police to go obtain information from another source. United States v. Taheri, 648 F. 2d 598, 600 (9th Cir. 1981); United States v. Azzara, 358 Fed. Appx. 802 (9th Cir. 2009).

In the case at hand, the investigation was a joint effort between CID and the ABI. The search of the electronic media involved was conducted by the ABI. The FBI was never consulted or notified of the investigation until after the illegal search was completed. When the FBI was contacted and reviewed the initial insufficient warrant application that was clearly lacking in probable cause to search the electronic media, the agent sought to remedy the error. But for the information discovered as a result of the bad warrant the referral to the FBI would not have occurred.

Thus, in this instance, the independent source rule is not applicable and the evidence should be suppressed.

### VII. Conclusion

Based on all the arguments outlined above, the evidence seized from Spc. Basey's room and the results of the forensic examination that followed should be suppressed.

DATED this 21st day of April, 2015.

> Respectfully submitted,
> FEDERAL PUBLIC DEFENDER
> FOR THE DISTRICT OF ALASKA
> /s/ M.J. Haden
> Assistant Federal Defender
> Alaska Bar No. 0607047
> (907) 646-3414
> mj_haden@fd.org

United States v. Kaleb Lee Basey
Case No. 4:14-cr-00028-RRB-SAO                                                                 Page 14

Case 4:14-cr-00028-RRB   Document 45   Filed 04/21/15   Page 14 of 15

<u>Certification</u>:

I certify that on April 21, 2015, a copy of the foregoing document, with attachments, was served electronically on:

Kyle F. Reardon, Assistant U.S. Attorney

*/s/ M.J. Haden*